Case number 24-1108, Indian Peak Properties LLC petitioner versus Federal Communications Commission and United States of America. Mr. Gaiman for the petitioner, Mr. Green for the respondents. Good morning, counsel. Mr. Gaiman, please proceed when you're ready. Good morning, your honors. May it please the court. Julian Gaiman on behalf of Indian Peak Properties, the petitioner. I would like to address two key points in this case. The first is that the FCC bureaus did not follow the rule that the FCC had promulgated to handle Indians Peaks petitions. And furthermore, the bureaus did not have authority to do what they did. They acted outside of the rule and they acted outside of delegated authority. The second point is that notice and comment rulemaking was required for the human contact part of the order that's under review now. So turning to the first question of delegated authority, I think the commission has... One question before you go on, just to clarify. So when you argue, your argument is about your second point about the failure to follow notice and comment rulemaking. Yes. Other than that, you do not challenge the substance of their human presence requirement. You just... It's the procedure. These are valid, can be valid claims, obviously, but it's the procedure that they didn't do it the right way, they didn't go through notice and comment rulemaking. That's correct, Judge Millett. We believe the FCC had the authority to make that ruling. They just did not give notice and they did not do it in a notice and comment proceeding. Okay. Thank you. Sorry to interrupt you. So on the question of delegated authority, the rule sets out some rather detailed procedures. In fact, the larger part of the rule covers procedure and the smaller part of the rule covers the substantive requirements of the rule. The FCC pretty much has conceded that it did not follow. However, the FCC relies on Section 4J of the Communications Act. Briefly, Section 4J says the commission may conduct its proceedings in such a manner as will best conduce to the proper dispatch of business and to the ends of justice. That does not apply here because this was a bureau action. This was a kind of an ad hoc action taken by two of the bureaus of the FCC. Section 4 of the Communications Act. I would say, frankly, that I think you have a strong argument on the merits on this claim, but I think there's a procedural issue, which is we're reviewing what the commission did. You're arguing that the bureau violated these provisions. And for the commission, you didn't get a ruling on how these procedures are supposed to work. And in the record, it appears that you told the commission that you didn't need a ruling about the public notice and the procedures. So I'm looking at JA-676 and JA-753. And you, in your application for review, said placing Indians' OTART petitions on public notice at this late date would add nothing new. And then at 753, you said there is no need for further public notice. Indians' petitions are ripe for grant. So it just seems to me that procedurally, we can't reach this issue, which I think could well be meritorious. But procedurally, we have nothing to review from the commission because you didn't get a ruling from the commission about how these procedures are supposed to work. So I would respectfully disagree that we did not ask for a ruling on how the procedures are supposed to work. What we said was that because all of this proceeding has been going on for a couple of years now, and the harm has already been done for a lack of a proceeding, that it wouldn't help us any to have a proceeding now. We raised the issue of failure to follow the rule. We raised that repeatedly through the petition for reconsideration and the application for review stage. So we contend... I know that you raised it, but then did you at some point abandon it by telling the commission that you didn't need a ruling on that and that you didn't want that relief anymore? We did not say we do not need a ruling. We just said at this point, we do not need further public notice because this had been going on for some time. We did not say no ruling needed on the rule violation. And what could it do for you to prevail on this at this point? Because it doesn't seem like the relief you've asked for, or just understanding what the process would be that would unfold, could change anything. Well, the first thing is that the proceeding would be ruled unlawful, and under the Administrative Procedure Act, the order would be reversed. So this would definitely give us relief. But you're not asking for the proceeding actually to be reopened or anything, right? You didn't... We're asking for it to be returned to the commission with instructions to do not inconsistent with the court's order. And then what would happen that would benefit you? Because if the underlying substantive determination is okay, then how is this going to benefit you? So, again, the commission needs to go through its notice and comment proceeding in order to make that substantive ruling. Okay. I want to make... I just want to clarify one thing. There's two notice and comments going on here. One is the one in the rule about a proceeding, and then they put a petition out for notice. And then there's what we traditionally just call ordinary notice and comment. Rulemaking. Right. Where they solicit comments from the public. Before you change the substantive... So if they were amending this rule, the rule it is, you hear the 1.4 thousand rule. Just now you were talking about the procedural one under the rule that comes with your petition, putting it out for comment. Is that right? No, just now I was talking about the rulemaking proceeding. In order to reach the substantive result that the FCC reached, it has to go through APA notice and comment rulemaking. And when did you argue that to the commission? We did not. But it's still before the court under an exception to the exhaustion principles. The commission has already rejected our arguments about Continental Airlines. So it would be futile to bring it up again. Also, the commission has a rule that strongly discourages a petition for reconsideration after an application for review has been denied. Okay. So turning to the second point of the notice and comment rulemaking. This really was a new rule. Under the commission's Continental Airlines case, the analysis stopped at the company being the user that is recognized by the rule. Now the order goes beyond that and says we're going to look beyond the company and look at the users. There has to be human presence below the company. So this is a new rule. I'm out of time, and so I will wrap up there. Okay. Thank you. We'll give you a little time for rebuttal.  Mr. Grimm. Thank you, Your Honor. May it please the court. I'm John Grimm on behalf of the FCC in the United States. The FCC's OTARD rule was never intended to protect a house full of antennas with no people in it. And this morning I believe we heard Indian Peak concede that the substantive decision that the FCC made in this case was a decision that it had the authority to make. So I understand that Indian Peak is really raising procedural issues, and I'd like to briefly address several of those. The first is the question about whether or not the bureaus had the authority to act in the way that they did and whether they were required to put the petition out for public comment. I think that Judge Pan's question correctly identified the problem here, which is that there is no final FCC decision one way or the other. So I want to stress that the Commission has not endorsed what the bureaus did. It has not affirmed what the bureaus did. It didn't address whether or not the bureaus were required or whether or not the bureaus had violated the rule because it found an alternate basis for ruling on the petition because it found that that issue had been rendered moot. In terms of the mootness point, I also would like to again emphasize the point that Judge Pan asked. The language Indian Peak used when it pulled the Commission that there would be no need for further comment does not read as language you use if you're saying, well, we're going to cut our losses. It would just be futile at this point. There's no wasting any more time. They didn't say those things. They said there's no need for further review. They said that the petition was ripe for grant, which suggests that they're satisfied with the record to the point that they believe the record would allow them to win. And they also emphasized that the city, which is the only evident party in interest, had had an opportunity to take full advantage of the proceedings back and forth. So in every practical sense, this was functionally the same as a notice and comment proceeding where the parties submitted their briefs back and forth. I'd also like to address the issue... I don't know how this notice is supposed to work. I mean, I thought the point of the notice was to obtain public comment. An ordinary APA notice and comment rulemaking, one party couldn't sort of say, let's just skip that. I'm content. The agency has an obligation to hear from not just that party, but the public. How is that different under this rule? Oh, Your Honor, I'm not suggesting that it is different under this rule. I think that the comment referred to in the rule refers to public comment as you described. So why does it matter that he said, I don't think we need public comment? Because he is the... they're the petitioner. They're the ones who were originally the proponent of the argument that the agents, that the Bureau, had violated the rule. And so when they then say... That would be a waiver argument, not a mootness argument. I think that... They waive the argument on appeal, not a mootness argument, because if an agency has an obligation to obtain public input, the fact that a particular party doesn't want it, it would seem not to obviate that duty. Well, Your Honor, I think in terms of the waiver versus mootness point, the commission found that it was moot, not just because of what Indian Peak said about the need for further comment, but also because it found that Indian Peak hadn't demonstrated a sufficient human presence to trigger the rule. And so since it found that the petition should be denied on its merits, that that argument was rendered moot. And I'd also... I'm just asking, as you said, he's not contesting the human presence requirement in this appeal, or this review, petition for review. And so all we're focused on is this notice issue. And I'm trying to understand how it is that a particular party that maybe doesn't want public input for some... I'm not saying that's true here, but if you can imagine a case where someone doesn't want the public to weigh in on what they're doing, why the commission would think that's fine, that obviates their duty to do what their rule provides, which is public input before we decide? There's an incomplete record. Your Honor, I think... I don't read the commission as saying that it is able to obviate that duty. I think that the commission in this case simply didn't make a decision one way or the other on whether that rule had been followed by the Bureau. And I think that, again, Indian Peak did not... But it thought it could go ahead and make a substantive decision without having the type of record before it that its rule requires. I mean, you just said that's what they did next. And that's what I'm curious about, and particularly I'm curious about how we could call it a moot, rather than maybe an argument waived on appeal, but a mootness issue when, in fact, the agency then did make a substantive decision on the record, but it was not the record that the rule requires. Well, Your Honor, I think that, you know, in the first place, the commission... If there was a... If the commission was incorrect, for example, that it had the record it needed, you know, that may be a matter for the commission on remand. But the point here is that Indian Peak didn't challenge that issue. Indian Peak didn't press the issue. And so, you know, after the commission ruled substantively on its petition. And so, there isn't an agency decision as to the propriety of the Bureau's actions before the court today. Indian Peak doesn't dispute that it didn't file a petition for reconsideration. And under this court's precedent, even if the need for a reconsideration petition doesn't appear until you get that order from the commission, you still have to file it. It's a statutory requirement. They've argued that the FCC's rules discourage reconsideration petitions. I'm not exactly sure what they think discourages them, but the statute requires the reconsideration petition. And there's certainly no reason to that the futility exception would apply here, that there's any reason why the agency wouldn't consider that in its ordinary course. So the Bureau's resolved this issue on a different ground. They said that instead of saying there's a regular human presence requirement, they said that service providers are not users under the rule. And I'm just... That seems like a much more straightforward way of addressing this issue. And I'm just wondering if you have any sense of why that would be abandoned and this new regular human presence requirement instead was adopted. Well, Your Honor, I think that perhaps the best way to look at the reasoning that the commission used is to remember the context in which this case arose. This was a petition for a declaratory ruling. Indian Peak asked the commission to decide whether, under its unique set of facts, the OTAR rule applied to it. And so it presented the commission with a house that had no real regular human activity and, by all appearances, seemed to just be an empty building hosting a bunch of antennas. And so I think that the commission properly recognized that the OTAR rule has historically been intended to protect people's access to certain wireless services. So why doesn't the Bureau's reasoning also address that same issue, which is service providers are not users under the rule? Well, I think that in some ways the commission's ruling is a bit broader than the Bureau's because a service provider could have a physical presence at the house. And if the service provider's employees were there using the equipment, it might fall within. So I think what the commission was trying to distinguish is that dividing line isn't so much are you a provider versus... That doesn't make sense, though, because if they're a service provider, whether they're present or not under the Bureau's reasoning, they're not subject to the rule. Well, I think that what the Bureau was focusing on is language in the order that says that a service provider can't put an antenna on a house that doesn't have a user and then claim the protection of the rule. But I think that the commission wanted to reorient the focus away from who's the entity putting the antenna on the house toward who's the entity or the person using the antenna. So I think that the point of the human presence requirement is that... But who's using the antenna? There's a separate requirement that it has to be the user has to be the person who owns the house. Well, the... Or the person who owns the house or property or leasehold has to also be a user. But that's a separate requirement from... That's correct, but I think... Choosing between service providers or not providers. That's correct, Your Honor. I think under the commission's decision in Continental Airlines, that would expand beyond just the person who has the actual lease or deed to their invitees, their business invitees. No, I understand that. It just doesn't answer my question of choosing between these two theories, why they would choose one versus the other. I think it's because the commission was focused on the history of the rule, which originated as a protection of individual viewers' access to broadcast systems. And then over the years, as the commission expanded it to reach different types of technology, it always emphasized that it was retaining the rule's core protections and hadn't changed the core functionality of them. I do see that I'm... Can I just add, so we have the one paragraph in the commission's order that deals with the argument that the procedures weren't appropriately followed. And that paragraph culminates in a statement about moodness. And you're... And there's a challenge now before us about the procedures not being followed. In your argument, what's your ground by which to reject that argument in light of the fact that the commission's order grounds it in moodness? Well, I think, Your Honor, the commission's order and finding of moodness is before the court. And so certainly the court could disagree with the commission and reverse it on that basis. It would still, I believe, need to be the commission's decision in the first instance whether or not its rules were followed because it didn't render a final decision on that point. Right. But you're asking us to reject the petition for review. Well, correct. We are. But I recognize that if the court disagrees with the commission as to that moodness point, it would still be... The commission would still need to be able in the first instance to decide affirmatively whether or not the bureaus had violated that rule. Right. But if you want us to reject the petition for review, then in light of this paragraph, I just want to make sure I understand. Because you have the procedural argument that there should have been a petition for reconsideration that wasn't made. It should have been. Is that the route? Or what's your... Well, yes. Yes. And I'm sorry, Your Honor. We certainly don't think that there is a need to reverse because of the fact that they didn't file a petition for reconsideration and they didn't challenge the things that the commission did in the final order. I was simply addressing the component of your question about what happens if you don't think it was a correct ruling that the decision was made. Okay. I see that my time is up. Happy to answer any further questions, but I'll take my seat. Thank you. Thank you, counsel. Thank you. I'll give you two minutes for rebuttal. I would like to address the moodness question. So what we've discussed is that the commission declined to rule on the procedural shortcomings of the bureaus saying that the whole thing is moot. And in our reply brief, we listed three reasons why it's not moot. So I would just simply refer you to the reply brief that addresses the moodness. It's not moot. It's very much alive. Would you argue to the commission that it was not moot? No. All right. Thank you. Okay. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Millett; Pan